The judgment of the court was pronounced by
Preston, J.
On the 13th of February, 1850, C.Wintz made affidavit before James McGarey, a Justice of the Peace of the parish of Jefferson, for the city of Lafayette, “that two beeves, about the 6th of that month, were feloniously stolen and taken out of his stable in the city of Lafayette, by some persons whose names he did not know, and that he had good reason to believe that his beeves or their hides were concealed in certain premises on Third street in the city.” He asked for a search warrant, and that the persons he would point out should be arrested and dealt with according to law.
The search warrant was issued, with an order of arrest. Eleven hides were found by the officer on the premises, which Wintz and others stated to be their property; and one Jean Pierre Despless, and others about the premises, were arrested and brought before the justice of the peace. It was ascertained that the premises where the stolen property was found belonged to Despless, and he was committed to jail for the want of security. The same day he was bailed by the justice of the peace on his giving bond, with Anthony Ozer as his security, in the sum of one thousand dollars, for his appearance on the 15th of February, 1850, for examination.
*745 A bond was drawn up by bis counsel, and signed by him and his security, in which they acknowledged each to owe the State of Louisiana a thousand dollars, upon the condition that if Despless should appear before the 1-Ion. James Mc-Garey’s court on the 15th of February, 1850, to answer the complaint brought against him and others for stealing cattle, the property of C. Wintz and others, then the recognizance should be void, otherwise should remain in full force and virtue.
On the 15th of February, at the hour appointed for the examination, Despless did not appear; his security being in court was required to produce him, which he failed to do; and thereupon the justice of the peace declared and entered upon his record these facts, and that the bond was forfeited. The State of Louisiana, by the district attorney of the district, has instituted this suit to recover the amount of the bond from Anthony Ozer, the security.
As the defence of this suit is based mainly on the ground that the justice of the peace exercised powers which did not belong to him, and exercised those which did belong to him in an illegal manner, it may be useful to say a word in relation to the class of magistrates to which he belongs. Justices of the peace are the class of judicial officers elected by the citizens, and more immediately connected with the whole population of the State than the other officers of the judiciary department of the Government; and upon their faithful and energetic discharge of their duties, the safety of individuals, and the peace and good order of society depends more than upon any other class of officers. It is their duty to bring before them the highest officer of any department of the Government, as well as the humblest individual against whom a complaint is made, to be examined and deal with him according to law. This power was given at the very first session of the Territorial Legislature in 1805, and has been confirmed by subsequent statutes until the present time.
The Constitution of 1845 organized this body of magistracy as a part of the judiciary, of course with the high powers and for the great purposes we have mentioned; and we must recognize in them all the powers given by the Constitution and the laws. And all the means of carrying their powers fully into effect.
In the words of the act of 1809 : “It shall be the duty of the justice of the peace, whenever there shall be brought before him any complaint or denunciation of any crime or offence, supported by the oath of a credible witness, to receive the complaint, and cause the accused person to be arrested and brought before him, to be examined according to law.”
The proceedings before Justice McGarey, which we have detailed, show that two beeves belonging to Mr. Wintz were stolen from him, in the city of Lafayette, about the 6th of February, 1850; that by virtue of a search warrant their hides were found upon the premises of Despless in that city; that he was arrested and accused of stealing them ; that he gave bond, with defendant as his security, to appear for examination upon that charge; and that he failed to appear for that purpose, as required by the condition of his bond.
Admitting all this, the counsel of the defendant contend that it was the duty of the justice of the peace to have examined Despless without delay, and if, in his opinion, there was a probability of the commission of a crime by the accused, then and then only to have taken a bond for his appearance, and not before himself, but before a higher court; and that, therefore, the bond taken for his appearance for further examination was unauthorized by law, and is a nullity.
*746 The examination of a person accused of a crime consists in receiving and reducing to writing the voluntary declaration of the accused of every thing he may choose to state in relation to the accusation. The magistrate is also bound to take in writing the depositions of all the material witnesses in behalf of the State, and, transmit them to the district court to be delivered to the district attorney, for the purpose of preparing the information or indictment. These depositions should be taken with the greatest care, and should be extremely particular and exact in details; for, those who have had experience as prosecuting officers know the great trouble, delay, expense, and often even the inefficiency of criminal prosecutions, owing to the loose, careless and general ner in which the depositions on behalf of the State are sometimes taken and reduced to writing by the examining magistrates. The examination consists, further, in hearing partially all the witnesses offered by the accused in his defence. The magistrate is further bound to hear counsel on behalf of the accused, not only as to the crime charged, but also as to many incidental questions that may arise as to testimony and bail, and other matters growing out of the accusation.
It may be his duty, as in the present case, to cause houses to be searched for stolen property, which will take time. It may be necessary for him to order the exhumation of the bodies of murdered men, and post mortem examinations by the medical faculty.
It is specially his duty to have written out and executed the recognizances of all material witnesses on behalf of the State, to appear before the court having jurisdiction of the offence to give evidence in the case. He is also bound to take a like recognizance from the witnesses of the accused, if there be danger that they will depart from the parish before the trial. Now, all this requires time and often delay. The witnesses may be temporarily absent, or in remote parts of the parish. The proceeding is the solemn prosecution of an offending individual for the general welfare of society. All the time and means should be taken to render his punishment certain, or to absolve him from unmerited imputation. He should not be released as a discharged felon, nor lightly subjected to further prosecution.
During these necessary delays, what is to be done with the prisoner ? He is not to be allowed to abscond, of course. In England, he was remanded from time to time to prison ; and Chitty states “ that the time for full investigation of the case, and final decision of the magistrate, should depend on the circumstances of each case; and that he should not be restricted to any particular time, as a general rule, for either the prisoner or his accuser may not be able to bring forward his evidence immediately ; and the compelling the magistrate to discharge or commit within any limited time, might be prejudicial to the purposes of justice.” 1 Chitty, Crim. Law, 74.
But our Constitution declares that “,all prisoners shall be bailable by sufficient sureties, unless for capital offences.where the proof is evident or presumption great.” Therefore, during the necessary delays in the examination of the case of The State v. Despless and others, he was entitled by this article of the Constitution to be bailed by sufficient sureties, until the magistrate, after full examination and deliberation, should decide either to discharge him or bind him over to the district court, to be tried upon the accusation of stealing the cattle. He demanded that right himself, and his counsel drew up, and he executed, a bond to appear from time to time to answer to the charge, and not to depart without leave of the court; and the defendant became his surety in the sum of a thousand *747 dollars, that he would comply with the condition of his bond The bond was taken in conformity to the universal practice in the State and Territory of Louisiana from their organizations ; a practice which, we are satisfied, is indispensably necessary under our Constitution and penal laws, without any special legislation to sanction it.
The entry of the justice of the pence on his record, that Despless was called in pursuance of his bond at the time appointed for his examination, and that he failed to appear-; that his surety being present was required to produce him iu court, but did not do so, and that their bond was forfeited, was not a judgment; for as the counsel contends, the justice of the peace had not jurisdiction of the amount; but it was a very proper proceeding to furnish evidence to enforce the penalty of the bond in a court having jurisdiction of the amount.
The counsel of the defendant further urges, that there was no consideration for the bond, that it is not even proved that a crime was committed, and that there could be no breach of the bond because Despless was not put in default. The manifest consideration of the bond was, that Despless being accused of a crime, nay, a thief taken in the mainour, for he was apprehended with the stolen goods actually in his possession; and being under legal arrest for the crime, was released from the prison on giving the bond to appear further and answer to the accusation. And the record abundantly shows that he broke the condition of the bond, by absconding from justice, rendering it impossible to have the crime formally established by evidence, verdict and judgment against him.
The counsel of the defendant lastly urge, that the justice of the peace had no power to proceed upon the bond in the summary manner prescribed by the acts of 1835 and 1837, relative to the recovery of the amount of bonds, recognizances and obligations due to the State in criminal cases. In this they are certainly right, and it was that which rendered the present suit before the district court necessary to enforce the penalty of the bond. But it is further intimated, that the summary mode of proceeding prescribed by those acts should have been pursued in this case in the district court. In this they err, because those laws expressly limit that remedy to bonds, recognizances and other obligations made returnable before the district court, which was not the case with the bond sued upon. It was returnable before the justice himself; and we know of no remedy for the State to enforce its penalty but that which has been pursued by the district attorney by bringing an ordinary suit before a court of general jurisdiction.
He has fully made out his case. And the judgment of the district court is affirmed, with costs.